**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID GOEBEL, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>READY CAPITAL CORPORATION, THOMAS E. CAPASSE, and ANDREW AHLBORN,<br><br>        Defendants. | Case No. 1:25-cv-3373<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Goebel ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based upon the investigation of Plaintiff's counsel, which included, among other things, review and analysis of: (1) regulatory filings made by Ready Capital Corporation ("Ready Capital" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (2) wire and press releases published by the Company; (3) analyst and media reports concerning Ready Capital; and (4) other publicly available information regarding Defendants (defined below). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Ready Capital common stock between August 8, 2024, and March 2, 2025, inclusive, and were damaged thereby (the "Class Period"). Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated

thereunder, against: (i) Ready Capital, (ii) the Company's Chief Executive Officer ("CEO") Thomas E. Capasse ("Capasse"), and (iii) the Company's Chief Financial Officer ("CFO") Andrew Ahlborn ("Ahlborn").

2.      Ready Capital is a real estate finance company that originates, acquires, finances, and services lower-to-middle-market ("LMM") commercial real estate ("CRE") loans, small business administration loans, and other real estate-related investments.

3.      This case concerns Defendants' misrepresentations regarding the severe impact that significant non-performing loans in Ready Capital's CRE portfolio were having on the Company's business.  During the Class Period, Defendants stated that the Company had "successfully executed several initiatives" aimed at improving financial performance, including asset management activities, that purportedly "further derisked" the Company's CRE portfolio.  Defendants also stated that Ready Capital's CRE portfolio was "showing stabilizing credit metrics," that the Company was seeing "normalization" of its CRE business to "historical levels," and that a decline in credit quality or performance of existing loans in the Company's CRE loan book was "a low risk."

4.      In truth, significant non-performing loans in Ready Capital's CRE portfolio were hampering the Company's financial performance and were not likely to be collectible.  The Company's performance improvement initiatives failed to "further derisk[]" the CRE portfolio and the credit metrics were not "stabilizing."  These significant non-performing loans in Ready Capital's CRE portfolio were not accurately reflected in its current expected credit loss or valuation allowances and, as a result, the Company's financial results were materially false and misleading.

5.      On March 3, 2025, before the market opened, Ready Capital announced its fourth quarter and full year 2024 financial results, reporting fourth quarter 2024 net loss of $1.80 per

share and full year 2024 net loss of $2.52 per share.  Defendant Capasse stated that "aggressive reserving on problem loans" and a "rightsizing of the dividend to current cash earnings" were needed to "accelerate the path to recovery."  Capasse further explained that Ready Capital had to take "decisive actions to stabilize" its "balance sheet going forward by fully reserving for all of our non-performing loans in our CRE portfolio."  This included, among other actions, taking roughly $284 million in combined Current Expected Credit Loss ("CECL") and valuation allowances for all of 2024 to mark the Company's non-performing loans to current values.  This represents a staggering increase of over $282 million as compared to the prior year.  The Company further revealed that its total leverage increased to "3.8x," up from the prior quarter's total leverage of "3.3x," and that it cut its dividend to $0.125 per share.

6.      On this news, Ready Capital's stock price fell $1.86 per share, or 26.8%, from $6.93 per share on March 2, 2025, to close at $5.07 per share on March 3, 2025, on unusually heavy trading volume.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this District.

11.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff is David Goebel.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Ready Capital common stock during the Class Period and has been damaged thereby.

13.     Defendant Ready Capital is incorporated under the laws of Maryland with its principal executive offices located in New York, New York.  Ready Capital's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "RC."

14.     Defendant Capasse was the Company's CEO at all relevant times.

15.     Defendant Ahlborn was the Company's CFO at all relevant times.

16.     Defendants Capasse and Ahlborn (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants

were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.    Ready Capital is a real estate finance company that originates, acquires, finances, and services lower-to-middle-market commercial real estate loans, small business administration loans, and other real estate-related investments.

18.    The Company's LMM CRE loans range in original principal amounts and generally do not exceed $40 million. The loans are used by businesses to purchase real estate used in their operations or by investors seeking to acquire multi-family, office, retail, mixed use or warehouse properties. Ready Capital's LMM CRE and small business lending segments comprise approximately 87.9% and 12.1%, respectively, of its total loan portfolio.

19.    Ready Capital states in its annual reports filed with the SEC that its objective is to provide attractive risk-adjusted returns to the Company's stockholders primarily through dividends, as well as through capital appreciation. Crucial to achieving this objective is the Company's ability to grow its investment portfolio and deploy capital to asset classes and segments with the most attractive risk-adjusted returns.

20.     During the Class Period, Ready Capital purported to be executing several initiatives to improve the Company's performance, given broader difficulties in the mortgage, residential, and commercial real estate markets due to market volatility and inflation.  These initiatives included reallocation of low-yield assets from the Company's M&A portfolio, exiting residential mortgage banking, and growing small business lending, among others.

**Defendants' False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on August 8, 2024.[1]  The day before, aftermarket hours, Ready Capital issued a press release announcing its financial results for the quarter ended June 30, 2024.  Defendant Capasse stated in the press release that the Company's financial results were "reflective of our cumulative efforts to cycle out of underperforming assets and into market yielding investments," and that "*[t]hese efforts, along with improving credit metrics across the loan portfolio* . . . position the Company to improve earnings moving into year end."

22.     The August 7, 2024, press release also discussed the Company's second quarter financial results, including its purported "net book value of $12.97 per share," as well as its CECL reserve and valuation allowance activity.  Specifically, the press release stated as follows, in relevant part:

**Second Quarter Highlights**

\*\*\*

• *Net book value of $12.97 per share* of common stock as of June 30, 2024

\*\*\*

The table below reconciles Net Income computed in accordance with U.S. GAAP to Distributable Earnings.

---

[1] Unless otherwise stated, all emphasis in bold and italics is added, and all footnotes are omitted.

| (in thousands) | | Three Months Ended<br>June 30, 2024 |
|---|---|---|
| Net Loss | $ | (34,201) |
| Reconciling items: | | |
| Unrealized loss on MSR - discontinued operations | | 7,219 |
| Unrealized gain on joint ventures | | (626) |
| Decrease in CECL reserve | | (24,574) |
| Increase in valuation allowance | | 80,987 |
| Non-recurring REO impairment | | 8,474 |
| Non-cash compensation | | 1,891 |
| Merger transaction costs and other non-recurring expenses | | 4,852 |
| Loss on bargain purchase | | 18,306 |
| Realized losses on sale of investments | | 22,355 |
| Total reconciling items | $ | 118,884 |
| Income tax adjustments | | (47,799) |
| Distributable earnings before realized losses | $ | 36,884 |
| Realized losses on sale of investments, net of tax | | (20,253) |
| Distributable earnings | | 16,631 |
| Less: Distributable earnings attributable to non-controlling interests | | 2,206 |
| Less: Income attributable to participating shares | | 2,301 |
| Distributable earnings attributable to common stockholders | $ | 12,124 |
| Distributable earnings before realized losses on investments, net of tax per common share - basic and diluted | $ | 0.19 |
| Distributable earnings per common share – basic and diluted | $ | 0.07 |

23.     On the same date, August 7, 2024, also aftermarket hours, Ready Capital published supplemental financial information related to its financial results for the quarter ended June 30, 2024.  The supplemental financial data discussed the Company's financial results, including the Company's purported net book value of $12.97 per common share and "[t]otal leverage of 3.5x and recourse leverage ratio of 1.0x."

24.     On August 8, 2024, the Company held an earnings call to discuss its second quarter 2024 financial results.  During the earnings call, Defendant Capasse offered prepared remarks in which he stated that Ready Capital had "***successfully executed several initiatives***," including "active asset management" and "reallocation of low-yield assets" which "better position[ed] the company for earnings growth[.]"

25.     During the August 8, 2024, earnings call, Defendant Capasse continued, stating that "***all credit metrics across our $7.9 billion originated CRE loan book improved quarter-over-quarter***."  Defendant Capasse also stated that the Company's M&A portfolio, comprised of assets

acquired in prior mergers and acquisitions, "totaled $1.1 billion across 81 assets **with improving credit performance**."

26.    During the August 8, 2024, earnings call, Defendant Capasse provided an "additional observation" on the Company's "overall CRE portfolio," stating that Ready Capital's "***recent asset management activities has further derisked our portfolio***."  Defendant Capasse went on to state that "***the recent rate rally is a green shoot***" for the Company's business.

27.    Defendant Capasse concluded his prepared remarks by stating that "***the tides are turning in the CRE cycle***" with green shoots in the form of rate declines, and in multifamily, peaking deliveries and improving transaction volume."

28.    During the question-and-answer portion of the August 8, 2024, earnings call, CGS International research analyst Stephen Albert Laws asked Defendant Capasse "[a]s you think about the different drivers of the earnings ramp, where is the biggest risk in executing that strategy? . . . Is it credit issues in the existing portfolio?"

29.    Defendant Capasse responded, stating in pertinent part that while the "big risk" in the Company's multifamily CRE loan book is "negative migration," which is a decline in credit quality or performance of existing loans, negative migration was "***a low risk***" due to the "underlying fundamentals," including favorable renting costs versus buying costs, and level of demand, given that Ready Capital is "in the affordable segment."

30.    The 2Q24 10-Q contained Management's Discussion and Analysis of Financial Condition and Results of Operations which stated that the Company's "allowance for credit losses" "***are reviewed quarterly considering credit quality indicators, including probable . . . losses[.]***"

31. The 2Q24 10-Q also stated that Ready Capital "**estimate[s] the CECL expected credit losses for our loan portfolio at the individual loan level**," which purportedly included "key loan- specific inputs" and "a macro-economic forecast."

32. On November 7, 2024, Ready Capital issued a press release announcing its financial results for the quarter ended September 30, 2024. Defendant Capasse stated in the press release that the Company's "**third quarter performance demonstrates our diligent efforts to reposition underperforming loans into market yielding investments**," and that with "**an improving economic environment**," Ready Capital "continue[d] to make significant progress toward our long-term targets that are marked by higher levels of sustained returns."

33. The November 7, 2024, press release also discussed the Company's third quarter financial results, including its purported "net book value of $12.59 per share," as well as its CECL reserve and valuation allowance activity. Specifically, the press release stated as follows, in relevant part:

**Third Quarter Highlights**

\*\*\*

- **Net book value of $12.59 per share** of common stock as of September 30, 2024

\* \* \*

The table below reconciles Net Income computed in accordance with U.S. GAAP to Distributable Earnings.

| (in thousands) | | Three Months Ended September 30, 2024 |
|---|---|---:|
| **Net Loss** | $ | (7,279) |
| **Reconciling items:** | | |
| Unrealized loss on joint ventures | | 2,173 |
| Increase in CECL reserve | | 52,442 |
| Decrease in valuation allowance | | (71,060) |
| Non-recurring REO impairment | | 525 |
| Non-cash compensation | | 1,916 |
| Merger transaction costs and other non-recurring expenses | | 4,070 |
| Bargain purchase gain | | (32,165) |
| Realized losses on sale of investments | | 109,675 |
| **Total reconciling items** | $ | 67,576 |
| Income tax adjustments | | (13,739) |
| **Distributable earnings before realized losses** | $ | 46,558 |
| Realized losses on sale of investments, net of tax | | (89,072) |
| **Distributable earnings** | $ | (42,514) |
| Less: Distributable earnings attributable to non-controlling interests | | 1,766 |
| Less: Income attributable to participating shares | | 2,241 |
| **Distributable earnings attributable to common stockholders** | $ | (46,521) |
| **Distributable earnings before realized losses on investments, net of tax per common share - basic and diluted** | $ | 0.25 |
| **Distributable earnings per common share - basic and diluted** | $ | (0.28) |

34.     On the same date, November 7, 2024, Ready Capital published supplemental financial information related to its financial results for the quarter ended September 30, 2024.  The supplemental financial data discussed the Company's financial results, including the Company's purported net book value of $12.59 and "[t]otal leverage of 3.3x and recourse leverage ratio of 1.0x."

35.     On November 8, 2024, the Company held an earnings call to discuss its third quarter 2024 financial results.  During the earnings call, Defendant Capasse offered prepared remarks in which he stated the Company's "***CRE portfolio is showing stabilizing credit metrics***."  Defendant Capasse stated that "[t]he rate of negative credit migration in the portfolio ***continues to stabilize***." What's more, Defendant Capasse asserted that the Company's longer-term Return on Equity premium, compared to its peer group, was supported by "***normalization of our CRE business to historical levels[.]***"

36.     On the November 8, 2024, earnings call, Defendant Capasse also discussed the Company's leverage position, stating that Ready Capital's "***leverage position remains***

*conservative*" with a "***total leverage of 3.3 times,***" which "***is below [the Company's] long-term target of four times.***"

37.     Defendant Capasse concluded his prepared remarks, stating that "***Ready Capital is well positioned to capitalize on the tailwinds in the CRE market,***" naming its "***stabilizing CRE platform***" as among the "***key drivers***" of the Company's earnings growth.

38.     During the November 8, 2024, earnings call Ladenburg Thalmann & Co. Inc. research analyst Christopher Whitbread Patrick Nolan sought to clarify Defendant Capasse's statements, asking: "am I correct that your comments earlier were sort of you thinking that you're through the worst of the commercial real estate cycle for Ready Capital?"

39.     Defendant Capasse responded "***Yes,***" stating that "***we're definitively seeing . . . the kind of sawtooth down in the absolute dollar delinquencies***, and what we're seeing in terms of the migration of the four or five assets as it relates to the originated portfolio, it definitely is mirroring [] what you're seeing in terms of the macro data in the multi-family sector."

40.     The 3Q24 10-Q contained Management's Discussion and Analysis of Financial Condition and Results of Operations which stated that the Company's "allowance for credit losses" "***are reviewed quarterly considering credit quality indicators, including probable . . . losses[.]***"

41.     The 3Q24 10-Q also stated that Ready Capital "***estimate[s] the CECL expected credit losses for our loan portfolio at the individual loan level***," which purportedly included "key loan- specific inputs" and "a macro-economic forecast."

42.     On November 25, 2024, the Company published its November 2024 Investor Presentation.  The Investor Presentation discussed the Company's strong market position due to its LMM CRE portfolio, as well as its "[c]onservative approach to credit with focus on high conviction sectors, superior markets and strong sponsors."  The Company also discussed its only

"< 5bps losses incurred on new originations since the company's start." The Investor Presentation further discussed the Company's "Financial Flexibility" including its "[t]otal leverage of 3.3x."

43.     The statements referenced in ¶¶21-27, 29-37, and 39-42 were materially false and misleading. Significant non-performing loans in Ready Capital's CRE portfolio were hampering the Company's financial performance and were not likely to be collectible. The Company's performance improvement initiatives failed to "further derisk[]" the CRE portfolio and, although Defendant Capasse stated that the "CRE portfolio is showing stabilizing credit metrics," the credit metrics were not stabilizing. These significant non-performing loans in Ready Capital's CRE portfolio were not accurately reflected in its current expected credit loss or valuation allowances and, as a result, the Company's financial results were materially false and misleading.

## The Truth Emerges

44.     On March 3, 2025, before the market opened, Ready Capital issued a press release and supplemental financial information regarding the Company's fourth quarter and full year 2024 financial results, reporting fourth quarter 2024 net loss of $1.80 per share and full year 2024 net loss of $2.52 per share. The press release included a statement from Defendant Capasse, who acknowledged that 2024 was a year of "mixed results" and stated that "aggressive reserving on problem loans" and a "rightsizing of the dividend to current cash earnings" were needed to "accelerate the path to recovery." Defendant Capasse went on to state that the Company had to take "***decisive actions to stabilize***" its "balance sheet going forward ***by fully reserving for all of our non-performing loans in our CRE portfolio.***" This included taking approximately $382 million in reconciling items, including $284 million in combined CECL and valuation allowances for all of 2024, to mark the Company's non-performing loans to current values. This action

significantly reduced the Company's book value per share to $10.61 compared to the prior quarter's $12.59 per share.

45.     The Company further revealed that its total leverage increased to "3.8x," up from the prior quarter's total leverage of "3.3x," and that it cut its dividend to $0.125 per share "to align with anticipated cash earnings."

46.     On the same date, March 3, 2025, the Company held an earnings call to discuss these financial results.  During the earnings call, Defendant Capasse stated that the Company has "undertaken . . . aggressive actions to reset the balance sheet and go-forward earnings profile," including "*a $284 million combined CECL and valuation allowances, which marks 100% of our non-performing loans to current values*."  This represents a staggering increase of over $282 million as compared to the prior year.

47.     On this news, Ready Capital's stock price fell $1.86 per share, or 26.8%, from $6.93 per share on March 2, 2025, to close at $5.07 per share on March 3, 2025, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Ready Capital common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of Ready Capital, and their families and affiliates.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

50.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    A.    Whether Defendants violated the Exchange Act;

    B.    Whether Defendants omitted and/or misrepresented material facts;

    C.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    D.    Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    E.    Whether the price of Ready Capital's common stock was artificially inflated;

    F.    Whether Defendants' conduct caused the members of the Class to sustain damages; and

    G.    The extent of damage sustained by Class members and the appropriate measure of damages.

51.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

52.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions.  Plaintiff has no interests that conflict with those of the Class.

53.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRESUMPTION OF RELIANCE

54.     At all relevant times, the market for the Company's common stock on the NYSE was an efficient market for the following reasons, among others:

    A.  The Company's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

    B.  As a regulated issuer, Ready Capital filed periodic public reports with the SEC;

    C.  Ready Capital regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    D.  Ready Capital was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Ready Capital stock promptly digested current information regarding Ready Capital from all publicly available sources and reflected such information in the price.  Under these circumstances, all purchasers of Ready Capital's common stock during the Class Period suffered similar injury through their purchases at artificially inflated prices, and the presumption of reliance applies.

56.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.

## NO SAFE HARBOR

57.    Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## LOSS CAUSATION/ECONOMIC LOSS

58.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. During the Class Period, Plaintiff and the Class purchased Ready Capital's common stock at artificially inflated prices and were damaged thereby. The price of Company's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Ready Capital common stock during the Class Period, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

59.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ready Capital, their control over, and/or receipt and/or modification of Ready Capital's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ready Capital, participated in the fraudulent scheme alleged herein.

## CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

60.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

61.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ready Capital common stock at artificially inflated prices.

62.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially inflated market prices for such securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ready Capital's business and revenue prospects, as specified herein.

64.    During the Class Period, Defendants made the false statements specified above which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

65.    Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal the truth about the Company's business and revenue prospects, as specified herein, from the investing public and to support the artificially inflated prices of the Company's stock.

66.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ready Capital's stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices had been artificially inflated by Defendants' fraudulent course of conduct.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's stock during the Class Period.

68. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

69. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

70. The Individual Defendants acted as controlling persons of Ready Capital within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

72.     As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Ready Capital stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: April 23, 2025                                Respectfully submitted,

                                              **BLEICHMAR FONTI & AULD LLP**

                                               */s/ Javier Bleichmar*

                                               Javier Bleichmar
                                               300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
Facsimile: 415-445-4020
amccall@bfalaw.com

*Counsel for Plaintiff David Goebel*

## <u>CERTIFICATION</u>

I, David Goebel, hereby certify as follows:

1.      I have reviewed the Complaint against Ready Capital Corporation ("Ready Capital") and others alleging violations of the federal securities laws and have authorized its filing.

2.      I did not purchase or sell securities of Ready Capital at the direction of counsel, or in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the Class in this matter, including providing testimony at deposition and trial, if necessary.

4.      My transactions in the Ready Capital securities that are the subject of the Complaint during the class period specified therein are reflected in Schedule A, attached hereto.

5.      I have sought to serve as a lead plaintiff and representative party in a class action filed under the federal securities laws during the last three years, but was not appointed in the following case:

- *Soto v. BioAge Labs, Inc. et al.*, No. 3:25-cv-00196 (N.D. Cal.)

6.      Beyond my *pro rata* share of any recovery, I will not accept payment for serving as a representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses including lost wages as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4/21/2025 _____

Signed by:

David Goebel

**SCHEDULE A**
TRANSACTIONS IN
READY CAPITAL CORP

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|:---:|:---:|---:|---:|---:|
| Purchase | 08/09/2024 | 1,100.00 | 8.76 | ($9,636.00) |
| Purchase | 08/09/2024 | 574.00 | 8.77 | ($5,031.11) |
| Purchase | 08/09/2024 | 684.00 | 8.77 | ($5,998.68) |
| Purchase | 08/09/2024 | 316.00 | 8.78 | ($2,772.90) |
| Purchase | 08/09/2024 | 5,657.00 | 8.78 | ($49,668.46) |
| Purchase | 08/09/2024 | 458.00 | 8.79 | ($4,023.53) |
| Purchase | 08/09/2024 | 9,579.00 | 8.79 | ($84,199.41) |
| Purchase | 08/09/2024 | 267.00 | 8.76 | ($2,337.59) |
| Purchase | 08/09/2024 | 33.00 | 8.78 | ($289.67) |
| Purchase | 08/09/2024 | 100.00 | 8.79 | ($878.90) |
| Purchase | 08/09/2024 | 100.00 | 8.79 | ($878.99) |
| Purchase | 08/09/2024 | 31,132.00 | 8.80 | ($273,961.60) |
| Purchase | 10/31/2024 | 1,773.48 | 7.05 | ($12,503.01) |
| Sale | 11/08/2024 | -1,773.00 | 7.30 | $12,934.04 |
| Sale | 11/08/2024 | -0.48 | 7.29 | $3.48 |